### BERNARD v. UNION TRUST CO. et al.

(Circuit Court of Appeals, Fourth Circuit. February 7, 1908.)

No. 738.

1. RECEIVERS—CERTIFICATES—AUTHORIZATION.

Where neither the trustee nor bondholders under a corporate trust deed were parties to a proceeding against the corporation in which a receiver was appointed when an order was passed authorizing the receiver to issue a certificate in payment for certain indebtedness for supplies to the corporation, such bondholders were not concluded by the order in so far as it directed that the certificate should constitute a first lien on the corporation's property.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, § 209.]

2. SAME—PRIVATE CORPORATIONS—PRIOR INDEBTEDNESS.

Where a receiver was appointed for a strictly private corporation and applied for permission to issue a receiver's certificate in payment for supplies furnished to the corporation prior to his appointment, which claim was not secured by any lien on the corporation's assets, it was error for the court, in authorizing such certificate, to direct that it should constitute a first lien on all the corporation's property as against nonconsenting bondholders secured by a deed of trust on the corporation's property.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, §§ 219–222.]

3. SAME—NEGOTIABILITY—DEFENSES.

A receiver's certificate issued under an order authorizing the issuance of a "negotiable" certificate was not negotiable within the law merchant so as to relieve the purchaser or his assignee from equities arising out of the proceedings in the case.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, § 215.

Nature of receivers' certificates, see note to Postal Telegraph Cable Co. v. Vane, 26 C. C. A. 350.]

Appeal from the Circuit Court of the United States for the Eastern District of North Carolina, at Raleigh.

C. M. Bernard, for appellant.

Iredell Meares, for appellees.

Before FULLER, Circuit Justice, and MORRIS and BRAWLEY, District Judges.

BRAWLEY, District Judge. This is an appeal from the decree of the Circuit Court disallowing the priority of lien over the first mortgage bonds of a receiver's certificate issued in the circumstances following:

The Carolina Northern Railroad Company filed in the Circuit Court of the United States for the Eastern District of North Carolina its bill in equity against the Southern Sawmills & Lumber Company, and the court appointed Augustus Mellier receiver December 1, 1902. Mayer & Co., merchants resident in Norfolk, Va., filed their petition in the cause December 26, 1902, setting forth that the Sawmills & Lumber Company was indebted to them by two promissory notes, one for $906.-18, payable February 10, 1903, and one for $1,821.28, payable March 12, 1903, charging that Mellier was the president of both corporations, that the bill in equity wherein he had been appointed receiver was a contrivance for continuing his control and management of the companies, and praying that they might become parties plaintiff in the suit of the railroad company against the lumber company above mentioned. On January 6, 1903, Mellier was removed and W. J. Edwards was appointed receiver of the Sawmills & Lumber Company, and May 16, 1903, the said receiver filed his petition in the cause stating that within five months prior to the receivership Mayer & Co. furnished the said Southern Sawmills & Lumber Company "upon the faith of its current receipts, and relied upon being paid out of the same sundry supplies, consisting of powerful leather belts, steam pumps, band saws, rolls of tarred paper, and a great quantity of iron piping, all of which supplies were necessary and absolutely essential to keep said corporation a going concern," and that there was due the sum of $2,727.46, recommending that he be authorized and empowered to issue a receiver's certificate for that amount, the same to be declared by its terms a first lien on all the property of every kind and description of the Southern Sawmills & Lumber Company. On the same day the court authorized and empowered the receiver to issue "a negotiable receiver's certificate for $2,727.46, with interest at 6 per cent. per annum from December 1, 1902, which, when countersigned by the clerk of this court or his deputy, shall be declared by its terms a first lien on all the property of the defendant corporation," and such a certificate was issued, and subsequently assigned to C. M. Bernard. On October 29, 1904, Robert L. Forrest, on behalf of himself and others who might become parties, filed a bill in equity against the defendant corporation, W. J. Edwards, receiver, and the Union Trust Company, in which the Union Trust Company filed a cross-bill, admitting its allegations, and praying for the foreclosure of the mortgage which had been executed June 1, 1901, by the Southern Sawmills & Lumber Company, and duly recorded. It appears from an affidavit in the record that Forrest, one of the bondholders, was present in court on the day when Edwards was appointed receiver, and asked the court's permission, through his counsel, to address it in opposition to such appointment, and was permitted to do so, but he did not enter a formal appearance in the cause, and was not a party to it. The two suits were consolidated, and on January 3, 1905, Edwards was removed as receiver and A. H. Slocumb appointed in his stead. It does not appear from the record that there

were any profits from the operation of the mills by the receivers Mellier and Edwards, and the court below adjudged a liability against receiver Edwards and a surety on his bond in the sum of $10,994.18. The net proceeds of the sale of the property by the receiver Slocumb amounted to about $36,000. The number and amount of the bonds secured by the mortgage does not appear in the record, but it does appear that the funds in the hands of the court are insufficient to pay the bonds in full, and the other claims held to be entitled to priority. The court below finds as a fact that neither the trustee nor the bondholders were parties to the cause when the order was filed authorizing this certificate to be issued, and there is nothing in the record that impeaches the correctness of such finding. "When such prior lienholders are brought before the court they become entitled upon the plainest principles of justice and equity to contest the necessity, validity, effect, and amount of all such certificates as fully as if such questions were then for the first time presented for determination." Union Trust Company v. Ill. Ry. Co., 117 U. S. 460, 6 Sup. Ct. 823 (29 L. Ed. 963). The receiver's certificate here must be considered merely an evidence of indebtedness, and can have no higher character than the debts which it represents. Those debts were for the purchase of supplies by the sawmill company, such as were ordinarily used by companies engaged in a like business, some months before the commencement of the suit in which the receiver was appointed. They were secured by no lien, entitled to no preference. As neither the trustee nor the bondholders came into the court initially asking the aid of equity in the administration of the property, one of the elements is lacking to support the doctrine commonly invoked, that those who ask the aid of the court to maintain their property are to be considered as consenting to all the necessary means. Most of the cases cited have arisen in railway foreclosures, where the power of a court of equity to authorize the issue of certificates by receivers, and to make them a first lien upon the property payable before the first mortgage bonds, has been upheld in numerous cases. In some of them stress is laid upon the fact that a railroad is a peculiar property, in which the public has an interest, and wherever there is a demonstrated necessity for supplies for its maintenance and operation receiver's certificates for such expenses have been allowed priority. So, too, receiver's certificates issued to borrow money to pay taxes are allowed preference, but that rests upon the ground that taxes are always a first lien upon all property, and there is only a substitution of one lien for another. No case has been cited wherein the Supreme Court of the United States has given its sanction to an issue by a private corporation, not affected with any public interest, of receiver's certificates to displace vested liens. The Circuit Court of Appeals for the Eighth Circuit, in Hanna v. State Trust Co., 70 Fed. 5, 16 C. C. A. 586, 30 L. R. A. 201, has expressly declared that the court could not, against the objections of the first mortgagees, displace their liens by the issue of certificates to carry on the business of a corporation whose business was of a private nature. So, too, the Circuit Court of Appeals of this, the Fourth Circuit, has held, in Baltimore Building & Loan Association v. Alderson, 90 Fed. 147, 32 C. C. A. 547, that "in the case of private corporations the court cannot

authorize the issue of receiver's certificates for the purpose of improving, adding to, or carrying on the business of a company without first having the consent of creditors whose liens would be affected thereby." In Wood v. Guarantee Trust Company, 128 U. S. 421, 9 Sup. Ct. 132, 32 L. Ed. 472, the Supreme Court says:

"Thirdly, the doctrine of Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339, has never yet been applied in any case except that of a railroad. The case lays great emphasis on the consideration that a railroad is a peculiar property, of a public nature, discharging a great public work. There is a broad distinction between such a case and that of a purely private concern."

It is unnecessary to decide this question, for if it was conceded that it was the proper function of a court of equity to carry on the business of a sawmill, the debt was not incurred by the court for that purpose. The certificate was not issued for the purchase of supplies for the preservation or improvement of the property while it was in the custody of the court, and to keep it a going concern; but for an indebtedness incurred some months before the court took charge of the property, for which the creditor had no lien under the law. There can be no presumption of consent by bondholders or trustee, because neither were parties to the cause in which it was issued. It cannot rest upon the equitable doctrine that there has been a diversion of income or funds to the use and benefit of the mortgage bondholders, for there has been no such diversion. All the authorities agree that the power to issue certificates of indebtedness and to make them a first lien is a power liable to great abuse, and to be sparingly exercised, and no case has been cited or found wherein a certificate issued by the receiver of a private corporation, in circumstances at all analogous to those appearing in this record, has been allowed priority over the mortgage bondholders.

As to the claim of C. M. Bernard that he is an innocent purchaser without notice and for value, it is sufficient to say that although it be true that by the terms of the order the receiver was authorized and empowered to issue a negotiable receiver's certificate, he cannot claim to hold as an innocent purchaser without notice, in the sense which that phrase imports, for certificates of this kind have not the quality of negotiable instruments under the law merchant. They are not commercial paper, and the purchaser or assignee can only recover upon them to the extent of the rights of the first payee. He is put upon inquiry as to all that was done in the cause wherein the certificates are issued and chargeable with notice. As said by the court in Union Trust Co. v. Ill. Midland Co., 117 U. S. 456, 6 Sup. Ct. 809, 29 L. Ed. 963:

"The receiver and those lending money to him on certificates issued and orders made without prior notice to the parties interested take the risk of the final action of the court in regard to the loans. The court always retains control of the matter; its records are accessible to lenders and subsequent holders, and the certificates are not negotiable instruments."

The decree of the Circuit Court is affirmed.